OLMSTEAD, Appellee,

v.

**NEW HAMPSHIRE INS. COMPANY, Appellant, et al.**

[Cite as *Olmstead v. New Hampshire Ins. Co.*, 159 Ohio App.3d 457, 2005-Ohio-39.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–04–017.

Decided Jan. 7, 2005.

458

James T. Murray, for appellee.

James W. Hart, J. Stephen Teetor, and John E. Vincent, for appellant.

KNEPPER, Judge.

{¶ 1} This is an appeal from the judgment of the Erie County Court of Common Pleas that granted appellee, Forest D. Olmstead, summary judgment against appellant, New Hampshire Insurance Company ("New Hampshire"). For the reasons that follow, we reverse the decision of the trial court.

{¶ 2} Appellee was injured in a car accident on September 11, 2001, while on his way to work at Checkmate Boats, Inc. ("Checkmate"). New Hampshire insured Checkmate with a Business Auto Insurance Policy ("BAP") and a Commercial General Liability Insurance Policy ("CGL"). Appellee settled with the tortfeasor for $50,000, the limit of his liability policy, and sought underinsured-motorist ("UM") coverage pursuant to Checkmate's policies with New Hampshire.

{¶ 3} In May 2003, the parties filed cross-motions for summary judgment. On March 8, 2004, the trial court granted appellee's motion for summary judgment. On March 30, 2004, the trial court filed a nunc pro tunc judgment entry regarding its March 8, 2004 entry and held that the CGL policy did not provide UM coverage for appellee,[1] that the BAP provided UM coverage to appellee, that defendants AIG and American International Group were dismissed, and that there was no just reason for delay.[2]

{¶ 4} On appeal, New Hampshire raises the following sole assignment of error:

{¶ 5} "The trial court erred in granting plaintiff-appellee's motion for summary judgment and in denying defendant-appellant's motion for summary judgment."

{¶ 6} In particular, New Hampshire argues that the trial court erred in finding that appellee's car was being used in the business or personal affairs of

---

1. Insofar as neither party appealed the trial court's decision with respect to the CGL policy, any alleged coverage available pursuant to the CGL will not be discussed herein.

2. The March 8, 2004 and March 30, 2004 judgment entries were identical except for the trial court's addition of Civ.R. 54(B) language.

Checkmate at the time of the accident and that appellee's car was therefore a covered auto under the policy's liability coverage. New Hampshire argues that the trial court further erred by finding that since appellee's car was a covered auto for liability purposes, appellee was an "insured" as defined in the policy's UM endorsement because he was "anyone 'occupying' a covered 'auto'."

{¶ 7} In *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 11, the Ohio Supreme Court stated:

{¶ 8} "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.* (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898, citing *Employers' Liab. Assur. Corp. v. Roehm* (1919), 99 Ohio St. 343, 124 N.E. 223, syllabus. See, also, Section 28, Article II, Ohio Constitution. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. Id. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. *Gulf Ins. Co. v. Burns Motors, Inc.* (Tex.2000), 22 S.W.3d 417, 423."

{¶ 9} In examining the policy as a whole, we find that Checkmate defined in its declarations page what vehicles were considered "covered autos" under the various types of coverage. The BAP policy declarations page states:

{¶ 10} "**ITEM TWO—SCHEDULE OF COVERAGES AND COVERED AUTOS.** This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those 'autos' shown as covered 'autos.' 'Autos' are shown as covered 'autos' for a particular coverage by the entry of one or more symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage."

{¶ 11} For purposes of liability coverage, the vehicles that are defined as "covered autos" are "Specifically Described 'Autos,'" "Hired 'Autos' Only," and "Nonowned 'Autos' Only." For purposes of UM coverage, only autos owned by the corporation are defined as "covered autos."

{¶ 12} Appellee argues that "Item Two" creates a difference between "covered 'autos'" and "covered 'autos' for a particular coverage." We disagree. The

declarations page clearly and unambiguously states that there is coverage only for "those 'autos' shown as covered 'autos.' " It then defines "covered 'autos' " as only those "autos" designated for a particular type of coverage. Even though other types of vehicles are defined as "covered 'autos' " for purposes of liability coverage, for purposes of UM coverage, Checkmate chose that only vehicles owned by the corporation would be considered "covered 'autos.' "

{¶ 13} The UM coverage endorsement states that when a corporation is the named insured, UM coverage is afforded to "[a]nyone 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'." The trial court held that appellee was entitled to UM coverage because, insofar as he was acting within the course and scope of employment at the time of his accident, appellee was driving and occupying a "covered auto." We, however, find that this analysis of the policy is incorrect.

{¶ 14} Clearly, if appellee had been within the scope of his employment at the time of the accident, he would have been afforded liability coverage because his vehicle would have been considered a "covered auto" under the category of "Nonowned 'Autos' Only." [3] As stated above, however, an insurance contract must be examined as a whole, and we must presume that the intent of the parties is reflected in the policy language. *Galatis*, supra, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 11.

{¶ 15} In the declarations page of the policy, in defining what vehicle is a "covered auto" for purposes of determining UM coverage, Checkmate selected that only those autos owned by the corporation would be considered "covered autos." Therefore, although appellee was occupying a "covered auto" for purposes of liability coverage, the contracting parties clearly did not include "nonowned autos," appellee's category of coverage, in the definition of "covered auto" for purposes of determining who was entitled to UM coverage.

{¶ 16} The UM endorsement states that the provisions of the coverage form apply unless modified by the endorsement. The endorsement does not define "covered auto." Hence, we find that the declarations page is controlling in determining what vehicles are defined as "covered autos" for purposes of UM coverage. Checkmate unambiguously selected that only "owned autos" would be considered "covered autos" for purposes of determining UM coverage. Further, had the UM endorsement intended to alter the definition of "covered auto" to include all autos that were covered pursuant to any given category, rather than

---

3. {¶ a} Nonowned autos is defined as:

{¶ b} "Only those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes 'autos' owned by your 'employees' * * * but only while used in your business or your personal affairs."

just those autos that were designated as "covered autos" for UM coverage, then the endorsement could have stated so. It did not. Moreover, if we were to afford UM coverage to any "covered auto," regardless of its category of coverage, we would fail to give effect to all terms and conditions of the policy negotiated and selected by the contracting parties.

{¶ 17} Insofar as only corporation-owned vehicles were "covered autos" for purposes of UM coverage, we find that the issue of whether appellee was within the scope of his employment is irrelevant in determining whether he was entitled to UM coverage. The inquiry ends after determining that appellee was not occupying a corporation-owned vehicle at the time of his accident.

{¶ 18} Additionally, contrary to appellee's argument, we find that it is reasonable that a corporation would pay a premium for coverage on behalf of its employees under circumstances in which it could be exposed to liability, but not under circumstances in which the corporation would derive no direct benefit from the coverage, such as arguably would be the case when providing UM coverage on employee-owned vehicles. Regardless, we find that appellee's argument is not germane to the issue of what coverage is provided by the terms and conditions of the insurance policy.

{¶ 19} Furthermore, to the extent that the trial court alternatively held that UM coverage would be afforded to appellee by operation of law, that holding is also erroneous. The version of R.C. 3937.18 in effect at the time of this policy stated that no automobile liability policy shall be issued unless UM coverage is offered "in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage." Former R.C. 3937.18(A)(2), 2000 Sub.S.B. No. 267, 148 Ohio Laws, Part V, 11380–11381. The trial court held that no waiver of UM coverage was signed and, therefore, that appellee was entitled to UM coverage by operation of law. Checkmate had $1,000,000 in both liability and UM coverage. Insofar as Checkmate purchased UM coverage, we find that New Hampshire clearly complied with the requirements of R.C. 3937.18 and, therefore, no UM coverage was created by operation of law.

{¶ 20} Based on the foregoing, we find that the trial court erred in granting appellee's motion for summary judgment and denying New Hampshire's motion for summary judgment. There being no genuine issue of material facts, we find that reasonable minds can only conclude that New Hampshire is entitled to judgment as a matter of law. See Civ.R. 56(C). Accordingly, we find New Hampshire's sole assignment of error well taken.

{¶ 21} On consideration whereof, the court finds that substantial justice has not been done the party complaining, and the March 30, 2004 judgment of the Erie County Court of Common Pleas is reversed. Pursuant to App.R. 12(B) this court

enters judgment on behalf of New Hampshire Insurance Company against Forest D. Olmstead on his claim for UM coverage pursuant to New Hampshire's policy with Checkmate Boats, Inc. This matter is remanded to the trial court for further consideration of the remaining prayers for relief in appellee's complaint. Pursuant to App.R. 24, costs are assessed to appellee.

Judgment reversed.

HANDWORK and PIETRYKOWSKI, JJ., concur.